# CHARLESTON

HAINS v. PARKERSBURG &C. RY. CO.

Submitted January 26, 1915.   Decided February 16, 1915.

1. WITNESSES—*Competency—Statements by Persons Since Deceased.*

   In an action against a street railway company for personal injury, caused by the negligence of the conductor, plaintiff is a competent witness to prove oral admissions by the deceased officer and manager of the railway company, tending to prove that he knew of the conductor's careless habits and his incompetency.   (p. 615).

2. SAME—*Competency—Conversations.*

   One who hears a conversation is as competent to testify concerning it as the person with whom it was had. The testimony of such witness is primary evidence.   (p. 615).

3. PRINCIPAL AND AGENT—*Knowledge of Agent—Notice to Principal—Master and Servant.*

   Knowledge by an agent respecting the incompetency of employees over whom he has charge for the employer, is knowledge of the employer.   (p. 617).

4. MASTER AND SERVANT—*Injury to Third Person—Incompetent Fellow Servant—Liability of Master.*

   If a master knowingly employs or retains a careless and incompetent servant, he thereby impliedly authorizes or ratifies his negligent acts, committed in the course of his employment, and, if the servant's negligence is wanton and wilful or malicious, the master is liable for exemplary or punitive damages.   (p. 617).

5. SAME.

   A pedestrian in the street, who without fault on his part, is injured by the conductor's negligently throwing a heavy tool off the car onto the pavement and striking him, is entitled to recover of the street railway company compensatory damages, and if the conductor's negligence was wanton and wilful or malicious, and was authorized or ratified by the company, either expressly or impliedly, he is entitled also to exemplary damages.   (p. 617).

6. HUSBAND AND WIFE—*Personal   Injuries—Recovery   by   Married Woman—Right—Amount.*

The earnings of a married woman are her separate estate, and, although she is living with her husband, she may sue alone for a personal injury, and is entitled to recover for loss of time and money expended in effecting a cure, if she avers and proves that her time, or a material part of it, was spent in earning money for herself.   (p. 619).

7. MASTER AND SERVANT—*Injuries to   Third   Person—Negligence of Servant—Scope of Employment.*

A street car conductor in charge of a passenger car, in assisting to unload heavy tools, such as shovels, picks and pipe tongs, which he had permitted to be carried on his car by passengers thereon, is acting for the railway company, and within the scope of his employment, it not being shown that the rules of the company forbade the carrying of such tools on passenger cars.   (p. 620).

8. TRIAL—*Refusal of Instructions—Pleading and Proof.*

Where there is nothing in the pleadings or proof to indicate that plaintiff claimed rights as a passenger, it is not prejudicial error to refuse an instruction telling the jury that he had ceased to be a passenger before the injury.   (p. 621).

9. TORTS—*Joint Tort Feasors—Liability.*

Joint tort feasors are jointly and severally liable, and if sued jointly the jury may find any one, or all of them, guilty, according to the proof.   (p. 622).

10. TRIAL—*Refusal of Instructions—Scope of Instructions Given.*

It is not prejudicial error to refuse an instruction telling the jury to find for the defendant, if they believe the injury was accidental, when it appears they have been properly instructed respecting the only ground of plaintiff's right to recover.   (p. 622).

Error to Circuit Court, Wood County.

Action by Margaret Hains against the Parkersburg, Marietta & Interurban Railway Company and another.   Judgment for plaintiff, and the defendant named brings error.

*Affirmed.*

*V. B. Archer,* for plaintiff in error.

*Wm. Beard, A. B. Fleming, Chas. Powell* and *Kemble White,* for defendant in error.

WILLIAMS, JUDGE:

In an action for personal injuries caused by the alleged

negligence of the servants of the Parkersburg, Marietta & Interurban Railway Company, and the Mountain State Gas Company, plaintiff recovered a judgment against the railway company only, and it brings error.

According to plaintiff's evidence she had been a passenger on one of the railway company's cars, and when the car stopped at one of the public street crossings in the City of Parkersburg, to let off and take on passengers, she alighted on the side of the car farthest from the post-office, and went around the hind end of the car to go to the post office, and, in going around the car, she observed a delivery wagon coming toward her, but, seeing that the driver had checked his horse she continued her course, and just as she was passing the end of the car she was struck on the ankle by a pick thrown off the car by the conductor. The pick was one of a number of tools which had been carried on the rear platform, by some employees of the gas company who had ridden on the same car. They were unloading the tools when plaintiff was passing around the car. They had gotten off on the opposite side from plaintiff. Two witnesses identified the conductor as the man who threw the pick that struck plaintiff.

This is the second writ of error in the case. It was here once before on a writ of error to a final judgment sustaining a demurrer to the declaration and dismissing plaintiff's suit. That judgment was reversed by this court, the demurrer overruled and the cause remanded for further proceedings. 71 W. Va. 753. Issue was then joined on a plea of not guilty and a trial had, resulting in a verdict and judgment in favor of plaintiff against the railway company, and verdict and judgment for the gas company.

It is assigned as error, that the court improperly permitted plaintiff and another witness, Mrs. Rutter, to testify concerning conversations had with Mr. Shattuck, president of the railway company. The objection to plaintiff's testimony is made on two grounds: (1) that, as Mr. Shattuck was dead, the witness was rendered incompetent; and (2) that statements made by him would not bind the railway company, which latter ground of objection applies to the testimony of both witnesses. Mrs. Rutter's testimony was objected to on the further ground that it was not the best evidence, that it

purported to relate a conversation had, not between herself and Mr. Shattuck, but between him and Mrs. Agnes Downey, witnesses' daughter. The death of Mr. Shattuck did not render the plaintiff incompetent as a witness to prove the conversation. Sec. 23, Ch. 130, Code 1913, does not preclude a party to a suit, or one interested in the result thereof, from testifying in relation to personal transactions and communications had with a deceased agent of the opposite party to the suit. The defendant railway company is not included in any of the classes of persons as to whom such personal transactions are forbidden to be given in evidence by a party to the suit or an interested person. The statute forbids such testimony, only against "the executor, administrator, heir at law, next of kin, assignee, legatee, devisee or survivor" of the deceased person, and the railway company does not occupy any of those relations to Mr. Shattuck; and, therefore, plaintiff was a competent witness. The enabling portion of the statute permitting all parties to suits to testify, qualified her as a witness, and the exception limiting its application, does not apply. This question was decided in *Board of Education* v. *Harvey*, 70 W. Va. 480, wherein we held that Mrs. Harvey, a party to the suit, could testify in her own behalf and against the board of education concerning personal transactions had with a deceased member of the board acting as its agent. Mrs. Rutter was present when the conversation between Mr. Shattuck and her daughter took place, and it does not appear that she did not have equally as good an opportunity to hear it as her daughter, and, having heard it, she is competent to testify concerning it. Her testimony was primary evidence. We know of no rule of law that would exclude her because she was not a party to the conversation. The testimony of plaintiff and Mrs. Rutter was evidence of admissions by Mr. Shattuck that he knew of the careless habits and incompetency of the conductor. Mr. Shattuck was president of the railway company, and it is proven he had power to discharge employees. Therefore his retention of an incompetent servant, with knowledge thereof, would be an act affecting his principal, which, being a corporation, can acquire knowledge and perform acts only through its agents and servants. The employment, or retention, by the master of a servant, known to

him to be careless and incompetent, is an implied authorization,. or ratification, of the servant's negligent acts, and, if the act is wanton, wilful and malicious, renders the master liable for exemplary damages. *Downey* v. *Railway Co.*, 28 W. Va. 732; 7 Labatt on Master & Servant, sec. 2560; 6 Thompson on Negligence, sec. 7174. Plaintiff says she went to Mr. Shattuck's office and told him she was the woman the conductor had injured, and he became angry and said his conductor did not do it, and if she would hear the conductor's story she would be fully convinced that he did not do it; that she informed him that two disinterested persons saw the conductor throw the pick off the car and strike her, but he insisted that she hear the conductor's statement, and agreed, if she would return on a day named, he would have the conductor present; that she returned on the day appointed and the conductor was not there, and he made another appointment with her for three o'clock of the same day, and she again went to his office and took her brother· with her, that the conductor was not then there. Continuing she says: ''I told him it wasn't worth while for me to wait, that possibly the conductor wouldn't come. And he insisted on it, and said he could believe his conductor's story, and he knew I would if I would hear it, and I said, Mr. Shattuck, possibly you do not know you had a careless man in that conductor. Q. What did he say? A. He says, Oh, I know he is no account, he stole from me and I discharged him.''

Mrs. Rutter testified that she went to Mr. Shattuck's office in company with her daughter Mrs. Downey, and heard a conversation between Mr. Shattuck and Mrs. Downey concerning the injury to plaintiff; that Mrs. Downey told him she saw the conductor throw a pick off the car and strike plaintiff with it; that he suggested that it might have been one of the gas company's employees; that when Mrs. Downey insisted she knew it was the conductor, because she saw him, Mr. Shattuck grew angry and told her he was surprised, and remarked that ''some of the conductors are awfully careless and there has been complaint about this conductor about being careless;'' that he told Mrs. Downey he was employing her husband and two of her brothers-in-law, and threatened to discharge her husband. The foregoing testimony tended to

prove that the railway company retained in its employ a conductor whose incompetency its president, having power to discharge employees, admitted he knew of. But counsel insists that it shows the conductor had been discharged. It does not show when he was discharged, nor that he was discharged for incompetency, but it does show that he was discharged because he stole from Mr. Shattuck. Mrs. Rutter says Mr. Shattuck threatened to discharge Mrs. Downey's husband, who was also an employe, because she insisted that she saw the conductor commit the negligent act. The jury had a right to weigh the whole of the testimony of these two witnesses, and from it find that Mr. Shattuck impliedly approved what the conductor had done by his trying to screen him, and professing not to believe him guilty in the face of his own admissions that he had heard a good deal of complaint about him. The testimony was admissible for the purpose of laying the foundation for recovery of exemplary or punitive damages, provided the jury believed the wrong was wanton and wilful. Of course a master is liable for compensatory damages, in any event, for the negligent performance of an act by his servant, done within the scope of his employment and in furtherance of his master's business, and he is also liable for exemplary damages, if the negligence is such that the servant himself would be liable therefor, and the master has either authorized it before it was done or ratified it afterwards. His authorization or approval need not be expressly made, but may be by implication. If he knowingly employs, or retains, a careless and incompetent servant, it is evidence of authorization or ratification, 7 Labatt, sec. 2560. The rule of implied ratification applies strongly to corporations as they act only through their servants and agents. 1 Sedgwick on Damages, (9th ed.), sec. 380. But in applying the doctrine of exemplary damages to corporations, the decisions are not uniform, some holding that authorization or ratification in some manner is necessary, and others that it is not. 1 Sedgwick, sec. 380; 7 Labatt, sec. 2554; and 6 Thompson, sec. 7175. The rule of general liability for exemplary damages is more often, and perhaps more justly, applied in actions against carriers for the misconduct of their servants in whose care they have entrusted

passengers.   The, carrier is under a grave contractual duty
and must exercise a degree of care commensurate therewith,
and, because of the extreme difficulty, in most cases, of prov-
ing even implied authorization or ratification, the protection
of the traveling public requires that they should be held
liable for the acts of their servants, to whom they have en-
trusted the performance of their contracts of carriage, if
done within the scope of their employment, to the same extent
that the servant himself is liable.   This court has so held in
the following cases:   *Davis* v. *C. & O. Ry. Co.*, 61 W. Va. 246;
*McDade* v. *N. & W. Ry. Co.*, 67 W. Va. 582; and *Wilhelm* v.
*Parkersburg &c. Ry. Co.*, 74 W. Va. 678, 82 S. E. 1089.
But, being of the opinion that it is the better rule, and more
consistent with justice, not to extend the doctrine of liability
for exemplary damages to corporations other than public
carriers, unless the servant's negligence is authorized or
ratified, it was essential to show authorization or ratification
of the conductor's wrongful act in order to fix liability on
the railway company for exemplary damages, because plain-
tiff is not suing as a passenger.   It does not appear that she
claimed the rights of a passenger.   Therefore, assuming that
plaintiff had ceased to be a passenger, the railway company
was still bound to use reasonable care to avoid doing injury
to her.   She had a right to the use of the street, as a pedes-
trian, which defendant could not violate without incurring
liability.   There was evidence tending to show that the car
was behind time, and the conductor may have been in haste
to get his car started and may have thrown the pick off care-
lessly, without looking to see if any one was in the street
and liable to be struck with it.   If he did so, and the jury
had a right to believe from the evidence that he did, he was
guilty of such reckless disregard of the rights of others as
amounted to legal malice.   *Vinal* v. *Core*, 18 W. Va. 1; and
*Spengler* v. *Davy*, 15 Grat. 381.   Whether his negligence was
wanton or malicious, was a question for the jury, there being
sufficient evidence from which it could properly be inferred.
Authorities above cited, and *Moats* v. *Rymer*, 18 W. Va. 642.

Plaintiff was a married woman living with her husband, and
there is evidence that, on account of her injury she was in a
hospital for sometime, and expended money for surgical and

medical treatment. The jury were instructed that she had a right to recover for money expended in effecting a cure and for loss of time, and this is assigned as error. We do not think the assignment is well taken. She had a right, under the statute, Sec. 15, Ch. 66, Code 1913, either to sue alone or join her husband as co-plaintiff. She chose to sue alone. *Warth* v. *County Court,* 71 W. Va. 184. The statute makes the earnings of a married woman as clearly her separate estate as it does her real estate and visible personal property. Sec. 12, Ch. 66, Code 1913. Plaintiff's declaration does not disclose that she was a married woman, and it was not necessary that it should do so. But it does aver that she was a school teacher and was rendered unable to pursue her occupation as such, because of the injury, and also that she expended large sums of money to effect her cure. These averments were sufficient to entitle her to prove loss of time and money expended. The declaration in the Warth case, *supra,* cited by counsel for plaintiff in error, did not contain any such averments, and there was no proof that Mrs. Warth employed her time, otherwise than as keeping house for her husband; and, for that reason, we held she was not entitled to recover for loss of time.

Taking what appears to us a reasonable view of the scope of employment and duties of a street car conductor, we hold that the conductor's negligence in throwing the pick off the car was an act within his employment, and was performed for his employer. A conductor would be expected to assist persons with baggage, or children, in boarding and in alighting from his car. So far as we have observed, it is the universal custom of polite and obliging conductors to do so, and such are the kind of persons that public carriers generally seek to employ. The conductor was assisting some passengers in loading their tools. There was no effort to show that it was a violation of the railway company's rules to carry such tools on the platform of its passenger cars. Hence the refusal of the court to permit a witness to answer the question, whether the street car company also ran freight cars, was proper. The answer, whatever it might have been, could have had no bearing on the case. Moreover, even if the answer were material, the exception does not disclose what the wit-

ness' answer would have been, and, therefore, fails to show prejudicial error.

We have carefully considered the assignments of error in relation to the court's giving certain instructions for plaintiff and refusing to give certain others for the railway company, and are of opinion that no error was committed in respect thereto. The most strenuous objection is urged to the giving of plaintiff's instruction No. 3, which authorized the jury to find exemplary damages, if they believe plaintiff's "injuries were inflicted in a malicious, unlawful, wanton and unnecessary manner and that the said defendant, with the knowledge of the manner of committing said injuries, thereafter ratified and approved the acts of its servants." In view of the law respecting implied ratification, which we have already discussed, and the testimony of plaintiff and Mrs. Rutter tending to prove ratification by Mr. Shattuck, this instruction was properly given. It would have been proper, even in the absence of evidence tending to prove ratification, if the relation of carrier and passenger had existed at the time of the injury, according to the comparatively recent decisions of this court in the three cases above cited. Those cases practically overrule point 7 in *Downey* v. *Railway Co.*, 28 W. Va. 732, and point 4 in *Ricketts* v. *Railway Co.*, 33 W. Va. 443, in so far as they relate to common carriers.

There was no prejudicial error in refusing to give defendant's instruction No. 1, which would have told the jury that the railway company was not responsible to plaintiff for her injury, as a common carrier of passengers. Her declaration is not framed on the theory that she was injured while a passenger, and there is nothing in the record to indicate that her counsel contended, or the court intimated, that the strict rule of liability of carriers applied to the case. The instruction might, with propriety, have been given, as it appears that plaintiff had been a passenger only a minute or two previous, but the refusal to give it certainly did no harm. Her right to recover purely compensatory damages does not depend upon the existence, or non-existence, of the relation of carrier and passenger, and her right to exemplary damages depends upon the wantonness and maliciousness of the negligent act,

and whether the railway company had authorized or ratified it, as to which the jury were properly instructed.

No. 1A., which would have told the jury that plaintiff, being a married woman and living with her husband, was not entitled to recover for loss of time, was properly refused, for the reason that she had averred and proved she earned money as a school teacher. The money so earned was her separate estate, and the time she lost was her loss, not the loss of her husband.

No. 2 is clearly erroneous and was properly refused. It would have told the jury that plaintiff was not entitled to a verdict, unless they found from the evidence that the injury was caused by the joint negligence of the servants of the railway company and of the gas company. Notwithstanding defendants were jointly sued for the tort, they were jointly and severally liable; and if the jury found the negligence was not joint, but was committed by a servant of one defendant only, they were bound to render their verdict against the guilty defendant, and in favor of the other one. This is a familiar rule in cases of tort. *Pence* v. *Bryant,* 73 W. Va. 126, 80 S. E. 137; *Johnson* v. *Chapman,* 43 W. Va. 639; and 1 Cooley on Torts, side page 153. Counsel for plaintiff in error does not insist upon this assignment of error in his brief.

Nos. 3 and 4 are on the subject of contributory negligence, in regard to which the jury had been instructed by defendant's No. A, and were, therefore, properly refused.

No. 5 would have told the jury that plaintiff could not recover, if they believed from the evidence that the injury was purely accidental. It could very properly have been given. But it is apparent that defendant was not prejudiced by its refusal, because the jury were plainly instructed that they had to believe, from the evidence, the negligence of defendant's servant was the proximate cause of plaintiff's injury, and that she was not herself at fault, before they could find a verdict for her. That, of course, excluded all right of recovery upon the mere theory of accident.

No. 6 would have submitted to the jury the question, whether or not the conductor, in throwing the pick off the car, was acting in the course of his employment. That is a question of law which the court had a right to determine from the

contractural relation between the conductor and the railway company, as to which there is no dispute. We have already intimated, in another part of this opinion, that it was an act performed by the conductor in the course of his employment. Whether it was ever contemplated by the railway company that such tools as the one with which plaintiff was injured would be carried on a passenger car or not, they were in fact carried on such car on the occasion in question, and presumably the conductor had a right to allow them to be carried. There is no evidence that he was forbidden to do so; and, in carrying them, the conductor was performing services for the railway company. It is not proper to submit purely legal questions to the jury.

The court very properly instructed the jury to render a verdict of not guilty as to the defendant, The Mountain State Gas Company, there is no evidence whatever in the record to warrant the finding of a verdict against it.

The evidence is very conflicting as to the manner in which plaintiff received her injury, some of defendant's witnesses say she ran against one of the employees of the gas company, who was handling a pair of heavy pipe tongs, and knocked them out of his hands and they fell upon her foot, near the ankle, causing the injury. Two eye witnesses for plaintiff testify that they saw the conductor throw the pick, saw it strike plaintiff on the ankle and saw her fall, and that they immediately went to her assistance. The jury were the judges of the weight of this conflicting testimony and, there being ample evidence to sustain their finding in favor of plaintiff, the court did not err in refusing to set it aside. We affirm the judgment.

*Affirmed.*