BIDDIE SIGMON, *Admx., etc. v.* ROY W. MUNDY AND H. EARL
MUNDY, *etc., et al.*

(No. 9440)

Submitted April 13, 1943.   Decided May 11, 1943.

*Steptoe & Johnson, Stanley C. Morris,* and *Robert W.
Lawson, Jr.,* for plaintiffs in error.

*A. P. Hudson* and *B. J. Pettigrew,* for defendant in error.

*Rummel, Blagg & Stone,* for J. S. Reynolds, *amicus
curiae.*

Fox, Judge:

On November 21, 1941, plaintiff's decedent, Stella Sigmon, lost her life in an automobile accident, at a point known as Droddy's Service Station, on the Elk River road, about five miles north of Charleston. The decedent was riding in a truck operated by her brother, Ira Sigmon, and was also accompanied in the truck by her sister, Biddie Sigmon. The truck was being driven in the direction of Charleston and was struck by an automobile travelling in the opposite direction and operated by J. S. Reynolds. The truck was almost demolished, the automobile badly damaged, and plaintiff's decedent suffered injuries from which she died a few hours later.

While the collision was between the truck and the Reynolds automobile, it is claimed that it resulted, at least in part, from the negligence of Earl Walker, the driver of a taxicab owned by Roy W. Mundy and H. Earl Mundy, partners doing business as Town Tops Taxi Company. The taxicab was being driven in front of and in the same direction as the Reynolds automobile, and, it is claimed, skidded on the road between the Sigmon truck and the Reynolds automobile, and in so doing travelled from one side of the highway to the other, but, immediately before the accident, passed from the left side of the road to the right side in the direction it was going, barely missing the truck, and passing in front of the oncoming Reynolds automobile, forcing Reynolds either to collide with the taxicab or to turn to the left. Reynolds turned to the left and crashed into the Sigmon truck. Plaintiff below instituted this action against the two Mundys, Walker and Reynolds, alleging concurrent negligence, proximately contributing to the accident, on the part of all of the defendants. A trial was had resulting in a jury verdict in favor of the plaintiffs, against all of the defendants, in the sum of $7,500.00. The Mundys and Walker jointly moved the court to set aside the verdict as to them, which motion the court overruled, and to which action an exception was taken at the time. Reynolds also made the same motion, which was likewise over-

ruled, and an exception taken. The trial court then entered judgment against all of the defendants on the verdict. Judgment as to Reynolds has become final, and the case comes to us on writ of error prosecuted by Roy W. Mundy and H. Earl Mundy, partners doing business as Town Tops Taxi Company, and Earl Walker.

In order to clear the atmosphere, and reach the real questions here involved, it should be stated that two facts stand out in bold relief: (1) The negligence of Reynolds proximately contributing to the accident; and (2) lack of any character of negligence on the part of the decedent, or in the operation of the truck in which she was travelling. The right of recovery by plaintiff against Reynolds is clear. The manner in which he operated his automobile, independent of the manner in which Walker operated the taxicab, removes all doubt on that point. This being true, two questions bearing upon the liability of the driver and owners of the taxicab are before us: (1) Was the taxicab operated negligently, and did such negligence cause or proximately contribute to the injuries which resulted in the death of plaintiff's decedent; and (2) was the negligence of Reynolds the sole proximate cause of the accident, even though the driver of the taxicab may, in fact, have operated the same negligently? In other words, did the negligence of Reynolds intervene between the negligence of Walker and the collision in such a way as to relieve the driver and owners of the taxicab from the consequences of what may have been their original negligence?

The answer to these questions depends mainly upon a consideration of factual matters, such as ordinarily require submission to a jury. These questions of fact were submitted to the jury and, in effect, a finding against plaintiffs in error was made on both points. Primarily, the question we have to decide is not whether the jury made a correct finding on the facts, but whether the evidence considered by it was of such a character as to warrant the finding it made thereon. That we may doubt

the correctness of the jury finding, (and as to this we express no opinion) is not sufficient to warrant us in disturbing its verdict if there was substantial evidence to support it. We do not deem it necessary to cite authorities on this point.

Coming to the evidence considered by the jury, it is not amiss to note that all of the material evidence comes from persons interested in the result of this litigation. This comment is not intended to reflect on the veracity of the witnesses, but merely to point out that if the testimony of certain witnesses is questioned on the ground of interest, the rule should be applied to the witnesses for both the plaintiff and the several defendants.

The accident occurred in the forenoon. Rain had fallen during the morning. The highway was of black-top construction, and was wet and slippery, and we think all persons involved are charged with knowledge of these facts. The taxicab and the Reynolds automobile were travelling down-grade at the point of the accident, which occurred at a filling station located on the right side of the highway in travelling north, and the taxicab driver says it was his intention to stop at this station to make some inquiry touching his destination. While it is not important, it is probable that the taxicab passed the Reynolds automobile some three or four hundred feet south of the point of the accident, and, at any rate, just before the filling station was reached the taxicab was in front and the Reynolds automobile was coming up in the rear, and, according to his own testimony and that of his wife, some sixty or seventy feet behind the taxicab. Here the conflict in the evidence begins. Ira Sigmon, the driver of the truck says that he saw the taxicab coming around the bend on the Charleston side of the service station, and that "he was going back and forth from one side of the road to the other", and that the taxicab was travelling between forty and forty-five miles an hour; and that he, Sigmon, slowed down his truck to about five miles an hour and turned to his right as far as he could without

going in the ditch. Reynolds, coming up from the rear of the taxicab, says that it skidded and that "it swerved back and forth as many as three or four times anyway"; and that it was completely on the left side of the highway, and in this statement he is supported by the testimony of his wife. Finally, and immediately before the accident, according to the statement of Reynolds, his wife, and Sigmon, the taxicab suddenly turned to the right and crossed the highway immediately in front of the Reynolds automobile, barely missing the truck, and passed onto the service station lot. Reynolds, as he says, in trying to avoid hitting the taxi, turned to the left and struck the truck, which was then and had been at all times on its right side of the road. On the contrary, Walker, the operator of the taxicab, denies that his taxicab ever skidded, and says that he was always on his right side of the road, and that it was not necessary for him to change his course to avoid striking the truck. This presents a clear conflict of evidence which the jury was called upon to decide, and which it did decide against Walker. Of course, if we accept Walker's testimony as true, then there was no negligence on his part; but are we warranted, as a matter of law, in accepting his statements as true. The jury evidently did not believe Walker, because if it had it would have been forced to find a different verdict. Can we say that it should have accepted his testimony as true, and ignored the testimony in conflict therewith? We do not think so. This was peculiarly a question for jury determination, and the jury necessarily finding against Walker's contention and testimony, we are, in the circumstances, bound thereby to the extent that courts do not run counter to jury verdicts where there is substantial evidence to support them.

Assuming, as the jury must have assumed, that the taxicab did skid, does that, alone, necessarily convict its driver of negligence? We think not. "The mere fact that an automobile skids on the road is not evidence of negligence". *Woodley* v. *Steiner,* 112 W. Va. 356, 164 S. E. 294; *Schade* v. *Smith,* 117 W. Va. 703, 188 S. E. 114. To the

same effect is *Jones* v. *Nugent,* 164 Va. 378, 180 S. E. 161. But in that case the Court said, "There was nothing to warn her that there was any trouble with the road or any defect in it. She had the right to assume that it was in a reasonably safe condition. She was not required by law to be on the lookout for obstructions". Evidently in that case there were no circumstances which connected the actual skidding with any negligence on the part of the driver of the automobile. It is true, of course, that an automobile may skid without the slightest negligence on the part of its driver. On the other hand, an automobile may be caused to skid by the negligence of the driver, and if established has the same consequences as to liability as negligence of any other character. The condition of the highway; the failure to take that condition into account; the speed of the vehicle considering the condition of the road; and the use of brakes are all matters which can be taken into consideration in determining the question of whether skidding was caused by some negligent act of the driver of a motor vehicle. In this case, Walker must have known, or at least he was charged with knowledge of the rain and the wet condition of the highway, and that the highway, being of black-top construction, would probably be slippery after rain had fallen. Then there is the question of speed. We can lay down no fixed rule as to what speed may be considered excessive. In this case we have testimony that the speed of Walker's car may have been from thirty to forty-five miles an hour—it certainly was not under thirty miles an hour—and may have been greater, although the undisputed fact that the running speed of the car was mechanically limited to thirty-seven miles an hour casts doubt on the statement, which at best was only an estimate, that the taxicab was running at a speed of from forty to forty-five miles an hour. But whatever the exact speed it was great enough, as we think a preponderance of the evidence shows, to cause the taxicab to skid at this particular point. Witnesses who testified as to the skid-

ding of the taxicab do not say what caused it to skid, and the taxi driver says it did not skid, so we are in the dark as to the exact reason for the skidding. Something in the operation of the taxicab, or the condition of the road, or its grade, caused it to skid. The jury evidently thought it was caused by negligent operation, and we cannot say, as a matter of law, that it was incorrect in its conclusion. The fact that it may have been travelling at less than the legal rate of speed, forty-five miles an hour, does not of itself excuse its driver from the charge of negligence. Code, 17-8-18, as amended, requires the driving of motor vehicles at a speed which will permit the driver to exercise proper control to prevent colliding with other vehicles or persons, and the duty to exercise due care in the use of highways is required. "The driver of a car must exercise unusual care to keep it under control on a slippery street or road, so as not to cause injury to another vehicle or an occupant thereof by skidding into it, particularly where the car is being driven on a grade or curve or at an intersection or where it is proceeding at a considerable speed. The question is one of the exercise of care; if the requisite degree of care is exercised, no liability results from skidding." 5 Am. Jur. 656. Whether skidding was the result of the operator's negligence is generally a question for the jury. In *Woodley* v. *Steiner, supra,* it is stated that the mere fact that an automobile skids on the road is not evidence of negligence. But the case then goes on to say in that case there was evidence that the highway was in a known slippery condition, and refers to the fact that other elements, including the presence of other vehicles, reasonably to be anticipated were inherent in the consideration of the manner in which an automobile should be operated in the circumstances, and then goes on to say, "This was a jury question", quoting *Nafziger* v. *Mahan* (Mo.), 191 S. W. 1080, to the effect that "In action for injuries in street collision, evidence that defendant, driving an automobile twenty-five miles per hour on an icy street, suddenly turned to the left to pass standing machine, when his machine skidded and struck plaintiff's automobile, which was almost halted,

presents a jury question". To the same effect is Blash-field, Cyc. of Automobile Law, Vol. 1, Section 653, and Huddy Automobile Law, Vol. 3-4, Section 68. We are of the opinion that the question of whether Walker, the operator of the taxicab, was negligent in the operation of his automobile was, in all the circumstances of this case, one for jury determination. We do not think that the jury's finding can be said to have been reached by resort to conjecture as to what caused the taxicab to skid. Sufficient facts were developed by the evidence to furnish a reasonable basis for the conclusion that the skidding was occasioned by the careless and negligent operation of the taxicab, either through excessive speed, considering the condition of the road, inattention to the road, or improper use of the brakes. Any one or all of these may have convinced the jury that the taxicab was negligently operated. There was, in our opinion, ample ground to sustain the jury verdict on that point.

The taxicab did not collide with the Sigmon truck. The Reynolds automobile, the driver of which was negligent, did strike the truck. Does this amount to intervening negligence on the part of the third person, which relieves the owners and operator of the consequences of any prior negligence of the driver of the taxicab, if such there was? If both Reynolds and Walker were negligent, and that negligence was concurrent, and the negligence of both proximately caused or contributed to the accident, then, notwithstanding any degree of negligence as between them, both are liable. *Starcher* v. *South Penn Oil Co.,* 81 W. Va. 587, 95 S. E. 28; *Hutcherson, Admr.* v. *Slate,* 105 W. Va. 184, 142 S. E. 444. But, as we held in *Scott* v. *Hoosier Engineering Co.,* 117 W. Va. 395, 185 S. E. 553, and *Miller* v. *Douglas,* 121 W. Va. 638, 5 S. E. 2d 799, where the negligence of two persons is so separated in point of time and circumstances that it may be said that the negligence of the one first in point of time ends, and that of another begins and causes the injury, and there is no necessary connection between the two at the time of the injury, there arises such intervening negligence as

relieves from liability the person guilty of the original or first act of negligence. We see no ground for the application of this doctrine to the case at bar. Here, according to the jury's finding, two persons were guilty of negligence which caused or contributed to the death of plaintiff's decedent. One was negligent in failing to operate his taxicab in a careful manner, causing the other, who was also negligent in not keeping his automobile at a safe distance to the rear of the taxicab, to turn from his proper side of the road to avoid striking the taxicab, and thereby colliding with the truck on its proper side of the highway. In our opinion the negligence found by the jury to exist is so related and so connected as to make it impossible to say which of the two drivers was most at fault. We think it clear that it required the negligence of both Walker and Reynolds, operating at the same time, to cause the accident. The truck in which plaintiff's decedent was riding was on its proper side of the highway at all times. If the driver of the taxicab had kept control of his vehicle, he could have turned into the service station lot or passed the truck on the highway. If Reynolds had kept a safe distance to the rear and his automobile under control, it would not have been necessary for him to turn to the left and collide with the truck. The negligence of both Walker and Reynolds continued up to the very moment of the collision. The fact that the taxicab had missed the truck by what may be termed a "split second", and that the Reynolds automobile at the same time in a matter of seconds in an effort to avoid colliding with the taxicab, collided with the truck, does not save the taxicab driver and owners from being held accountable for his contribution to the unfortunate event. We think a case has been established in which the theory of joint liability for acts of concurrent negligence proximately causing or contributing to the death of the decedent should be applied.

We find no error in the instructions and certainly there is no substantial or reversible error. In cases of this character it is not always possible to draw instructions which give the exact shade of meaning intended. The

case is further complicated by the fact that the defendants were not in accord on the defense made, and since the verdict their interests are clearly antagonistic. It would serve no useful purpose to attempt an analysis and justification of the several instructions given. Suffice it to say that the law applying to the different contentions of the parties was correctly stated to the jury in the instructions given, and we do not believe any of them could by any reasonable interpretation be held prejudicial to the rights of the plaintiffs in error.

As to the question asked by counsel for plaintiff below and the remarks of counsel, we can only say that we do not attribute to the question asked any suggestion that the defendants, or any one of them, were protected by insurance. As to the remarks of counsel, while having no proper bearing on the case, and therefore unfortunate, it is difficult to see how they could have had any prejudicial effect on the defendants objecting thereto. Aside from this the court, to the apparent satisfaction of counsel, cleared up the whole matter by withdrawing from jury consideration the question and remarks of counsel to which objections were made, and this, we think, removed any possible prejudice which may have been occasioned thereby. There are situations where such action of the court would not have had such an effect, but we do not think this is one of them.

The judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*