JOHN D. BREWER

*v.*

APPALACHIAN CONSTRUCTORS, INC., *et al.*

(CC 780)

Submitted April 11, 1951.  Decided May 8, 1951.

Fox, JUDGE, concurs.

*Albert M. Morgan, Don J. Eddy,* for plaintiff.

*Jesse M. Jaco, George Fumich, Jr., Furbee & Hardesty, Russell L. Furbee, C. H. Hardesty, Jr., Fred L. Lemley,* for defendants.   ,

740

GIVEN, JUDGE:

Plaintiff, John D. Brewer, in this action of trespass on the case, instituted in the Circuit Court of Monongalia County, seeks to recover damages against Appalachian Constructors, Inc., a corporation, and Victor Zeni, its employee; The American Oil Company, a corporation, and Dale Mayfield, its employee; and Christopher Coal Company, a corporation, and Guy Hinerman, its employee. The injuries for which plaintiff seeks recovery resulted from an explosion of dynamite on December 29, 1949, alleged to have been caused by negligent acts of defendants. The defendants filed separate demurrers to the declaration, one of the grounds of the several demurrers being that the declaration alleges, and improperly joins, several causes of action, and misjoins parties defendant. The trial court sustained each of the several demurrers and certified to this Court the following questions: "1. Whether there exists in this action a misjoinder of parties defendant. 2. Does the Declaration allege a cause of action against the defendants, or any of them?"

It appears from the declaration that the Christopher Coal Company was the owner of certain premises "known as the Brock No. 4 Mine", in Monongalia County, and that, "pursuant to an agreement" with the coal company, the Appalachian Constructors, Inc., was, at the time of the explosion, engaged in the construction of a vertical air shaft on the premises. Two buildings, the sand house and the machine shop, about four feet distant from each other, were situated on the premises. The sand house, about sixteen feet by twenty-four feet, of cement block construction, with a sand floor, was used by Appalachian Constructors in connection with its construction of the air shaft. The machine shop was approximately thirty feet by sixty feet, of cement block construction, and was used by the Christopher Coal Company and its employees, including the plaintiff, as a shop and office, and for storage of equipment and tools of the coal company. There was located in the sand house a gasoline storage tank of 242 gallons capacity, property of the American Oil Company.

There was also situated in the sand house a heating stove, wherein a fire was burning at the time of the explosion. The declaration charges that Appalachian Constructors and its employee did "carelessly, recklessly, injuriously and contrary to law, and in violation and disregard of the statute of the State of West Virginia prohibiting the storage of powder or other explosives in or near mine buildings, have stored in said sand house building on the day and year aforesaid a large quantity of powder and explosives, in cases therefor, to-wit, fifteen hundred dynamite caps and three hundred sticks of dynamite composed of dangerous chemicals", and that these defendants also kept stored in the sand house a large quantity of gasoline.

Pursuant to an order from the Appalachian Constructors, the American Oil Company, through its employee, Dale Mayfield, delivered a quantity of gasoline into the storage tank in the sand house, with knowledge that a fire was burning in the heating stove therein. The delivery of gasoline into the storage tank was made by means of a hose running from a tanker truck, elevated on a ramp, through an opening in the roof of the sand house, into an opening in the top of the storage tank, the flow of the gasoline being by gravity. After the hose from the tanker truck was so connected to the storage tank and the valve of the tanker truck opened, the employee of the American Oil Company "did negligently, carelessly, recklessly and injuriously walk away from said tanker truck with said valve open, allowing, providing and permitting gasoline to flow from said tanker truck through said hose into the gasoline storage tank in said sand house, by gravity flow, until the said storage tank in said sand house building became full of said gasoline, and said gasoline did thereby overflow and run over said storage tank down on to and upon said cradle structure and upon the said sand house floor, and run over and about the floor of said sand house, and about the said lighted and burning coal heating stove, and gas fumes and vapor did permeate the interior of the said sand house building,"

and ignited from the fire in the stove; and after the gasoline had ignited, did "negligently, recklessly, carelessly and injuriously drive said tanker truck away from said sand house building without closing the said valve or uncoupling the said hose from the rear of said tanker truck," thus causing and permitting gasoline to flow through the hose into the sand house, over its walls, on to the wooden structure supporting the roof, and that the heat from the burning gasoline and building caused the storage tank to explode, "detonating and exploding the dynamite".

The declaration alleges that the Christopher Coal Company, through its employee, Guy Hinerman, its "outside foreman", saw and had actual knowledge of the fact that the defendant, Appalachian Constructors, had illegally stored the dynamite, dynamite-caps, and a large quantity of gasoline in said sand house, and that the "burning coal fire" was then in the sand house; that plaintiff had no knowledge of such facts; that the Christopher Coal Company and Guy Hinerman "did carelessly, negligently, injuriously, and with deliberate intent to kill or injure plaintiff, omit and fail to have the explosive and inflammable dynamite and gasoline removed from the sand house and did fail and omit to warn plaintiff of the danger and risk to plaintiff of being in or near the sand house, and that after the sand house was aflame that defendant negligently, carelessly, injuriously, and with deliberate intent to injure or kill plaintiff, ordered, instructed, directed, encouraged, suffered, allowed and permitted plaintiff to go into the machine shop building" for the purpose of salvaging tools therein. While plaintiff was attempting to salvage the tools the explosion occurred and severely injured him.

The proximate cause of the injury is alleged in this language: "This plaintiff alleges that all of said injuries and losses sustained by him were caused by and are the direct and proximate result of the joint and concurrent negligence and carelessness of each, every and all of said

defendant, and the deliberate intent of the said Christopher Coal Company and its agent, Guy Hinerman, to so injure plaintiff, as aforesaid, without any fault or negligence on the part of the plaintiff."

The declaration, containing one count only, sets out in much more detail the facts outlined above. Appalachian Constructors contends that there is a misjoinder of parties, resulting from a misjoinder of causes of action; that the several acts of negligence were wholly independent of each other, giving rise to several separate and distinct causes of action; and that, therefore, the alleged negligence of Appalachian Constructors did not directly or immediately cause the injury, such acts not constituting joint or concurrent negligence. It also contends that the alleged negligence of American Oil Company was the "intervening efficient cause", or sole proximate cause of the injury. The American Oil Company contends that the several acts of negligence alleged are "separate and distinct", and that there was no "concerted action or community of responsibility between The American Oil Company and other defendants". The position of the Christopher Coal Company is that "several and different causes of action" are alleged and improperly joined and that, being a subscriber to the workmen's compensation fund, it is released or relieved from liability as to the injury of plaintiff. The question facing the Court, therefore, is whether the alleged acts of negligence constitute separate and distinct causes of action, or whether together they constitute the immediate proximate cause of the injury, creating only one cause of action.

From the facts alleged it sufficiently appears that the negligent acts of the Appalachian Constructors and its employee in the storing of the dynamite and the gasoline, dangerous agencies, in the building wherein the fire was burning, continued to the instant of the explosion, therefore contributing immediately and directly to the injury of plaintiff. That the fire and explosion should have been

anticipated and were foreseeable by these defendants can not be doubted. Neither can it be doubted that defendants should have anticipated that injury would result to persons in or near the buildings in the event of such an explosion. At the time of the explosion the fire negligently caused by the acts of American Oil Company and its employee was still burning, and without which negligence the gasoline tank or dynamite would not have exploded. Such fire undoubtedly also directly and immediately contributed to the explosion. That the fire and explosion of the gasoline tank should have been anticipated by these defendants seems clear. The negligent acts of the Christopher Coal Company and its employee also continued to the time of the explosion, and contributed directly and immediately thereto. In such circumstances there can be but one proximate cause of injury, and one cause of action. The several distinct and separate acts of negligence, operating concurrently, constituted the proximate cause of the injury. "The negligence of the defendant need not be the sole cause of the injury, it being sufficient that it was one of the efficient causes thereof, without which the injury would not have resulted; but it must appear that the negligence of the person sought to be charged was responsible for at least one of the causes resulting in the injury." 65 C. J. S., Negligence, Section 110.

We think the conclusion of the Court is supported and made clear by the following authorities. *Telephone Company* v. *Sand Company,* 131 W. Va. 736, 50 S. E. 2d 884; *Tawney* v. *Kirkhart,* 130 W. Va. 550, 44 S. E. 2d 634; *Gilkerson* v. *Railroad Co.,* 129 W. Va. 649, 41 S. E. 2d 188; *Sigmon* v. *Mundy,* 125 W. Va. 591, 25 S. E. 2d 636; *Hains* v. *Railway Co.,* 75 W. Va. 613, 84 S. E. 923; *Johnson* v. *Chapman,* 43 W. Va. 639, 28 S. E. 744. See Restatement of Torts, Section 882, 1 Shearman and Redfield, Negligence (Revised Edition), Section 39; 1 C. J. S., Actions, Section 65. Defendants rely upon cases like *Webb* v. *Sessler,* 135 W. Va. 341, 63 S. E. 2d 65; *Beuke* v. *Mining Co.,* 100 W. Va. 141, 130 S. E. 132; *Farley* v. *Coal & Coke*

Co., 85 W. Va. 595, 102 S. E. 265, 9 A. L. R. 933; *Anderson v. B. & O. Railroad Co.,* 74 W. Va. 17, 81 S. E. 579, 51 L. R. A. (N. S.) 888; *Dyer* v. *Hutchins,* 87 Tenn. 198, 10 S. W. 194; and *Jennings* v. *Davis,* 187 Fed. 703 (C. C. A. 4th).

In the *Webb* case negligence was charged against the owner of an airport, in the construction thereof, against a partnership operating the airport and the manager thereof, in permitting one Lilly to operate an airplane therefrom; against Keatley, the operator of a flying school, in permitting Lilly to operate the plane, and against Lilly in the negligent operation of the airplane. The allegations of the declaration showed clearly that the proximate cause of the injury was the negligent operation of the plane. Therefore, any negligence of the other defendants could not have contributed proximately to the injury.

In the *Beuke* case the action was against Cotts and a mining company for coal wrongfully mined from property of the plaintiff, for damages to the surface of one of the tracts of land, occasioned by failure of Cotts to properly support the roof of the mine; and for the statutory penalty for mining within five feet of the property line. Cotts was the lessee of the mining company as to one of the tracts, but the mining company, as lessor, was not liable for the tortious acts of Cotts, therefore could not be joined with him in an action for recovery of damages for such tortious acts.

In the *Farley* case six different coal mining corporations, operating independently of each other, up stream from plaintiff's farm, were sued jointly for polluting the stream by casting therein cinders and other refuse, and thereby causing injury to the farm of plaintiff. Here the acts of the several defendants causing the injury were clearly separate and distinct. "* * * and the injury the plaintiff has suffered from such acts, is a merely consequential result of the coincident and contemporaneous torts and not a direct and immediate one * * *."

In the *Anderson* case the defendant railroad company had delivered an empty freight car on a spur track to be

loaded by the coal company. Both defendants knew the brakes on the car were defective, the car having escaped the previous day because of the defective brakes and run down an incline. Agents of the coal company undertook to move the car to a coal tipple for loading when it again broke loose, because of the defective brakes, injuring plaintiff. Where "the causal connection between the first negligent act and the injury is broken, the last act, in legal contemplation, is regarded as the sole cause of the injury. The proximate cause thereof is the last negligent act contributing thereto and without which the injury would not have resulted." In the instant case, as previously pointed out, the "causal connection" of the several negligent acts was not broken, for all continued and contributed to the injury.

In the *Dyer* case dogs belonging to different owners killed sheep belonging to plaintiff. The statute made the owners of dogs liable for such injuries, but did not provide that different owners of dogs could be sued jointly. The Court pointed out that the owner of a dog was liable only for the injury done by his dog, and therefore could not be sued with owners of other dogs. In the instant case there was not a series of injuries, but one injury resulting from negligent acts of defendants.

In the *Jennings* case the defendant oil company operated an oil line over premises owned by plaintiff. Oil escaped from the line because of the blowing out of a gasket, saturating the ground near a barn and a blacksmith shop, and forming a pool under the blacksmith shop. The blacksmith shop was operated by one Cross, not under the employment or control of plaintiff or defendants. Cross, knowing of the oil about the shop building, lighted a fire in the shop, heated in the forge a piece of iron, and dropped a piece of the iron, while red hot, which rolled through a crack in the floor into the oil, and started a fire which destroyed the shop building and the barn. Here the act of Cross was the direct and immediate cause of the injury, "An independent intervening

agent, for which the defendants were not responsible, was negligent as a matter of law and was the proximate cause of plaintiff's loss".

Christopher Coal Company and its employee also contend that the right of action existing under Code, 23-4-2, as amended, relating to an injury of an employee with deliberate intent, is a statutory cause of action, and can not be joined with a common law action, the instant action, in so far as the coal company and its employee are concerned, being only "for an excess of damages over the amount received or receivable under the act." The pertinent part of the statute is: "* * * If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death; the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter." We are of the opinion, however, that the statute merely preserves unto an employee his common law right of action to sue for such an injury. The wording of the statute requires this conclusion. See 1 C. J. S., Actions, Section 67.

The Christopher Coal Company and its employee also contend that they can not be joined with the other defendants in this action, for the reason that there can be only one judgment herein, arguing that any judgment rendered against them would necessarily be reduced by the sum received or receivable from the workmen's compensation fund, and that any judgment against the other defendants would not be reduced by such sum. A familiar principle of law, requiring no citation of authorities, is that a plaintiff can have only one recovery for an injury. We see no reason why the rule should not apply where recovery or partial recovery is by way of an award from the workmen's compensation fund. It is also well settled that "Partial satisfaction of the injured person by one joint tort-feasor is a satisfaction, pro tanto, as to all."

Point 5, syllabus, *Coal Co.* v. *Eary*, 115 W. Va. 46, 174 S. E. 573. This rule should also apply where partial payment for the injury has been made from the workmen's compensation fund on account of one of the joint tort feasors being a subscriber thereto.

Another important question is raised by the demurrers of the Christopher Coal Company and its employee. Are the allegations of the declaration relating to "deliberate intent" of the coal company and its employee to "injure or kill plaintiff" sufficient to allow plaintiff to maintain the action, notwithstanding the company was, at the time of the injury, a paid subscriber to the workmen's compensation fund? The provisions of Code, 23-2-6, as amended, relieve the coal company from liability as to the injury to plaintiff, unless the cause of action preserved by Code, 23-4-2, as amended, is sufficiently pleaded. We look to the whole of the declaration to determine this, not merely the conclusion of the ultimate fact that the injury was inflicted with deliberate intent to injure or kill.

In *Collins* v. *Dravo Contracting Company*, 114 W. Va. 229, 171 S. E. 757, the declaration charged, in much detail, that defendant caused plaintiff's decedent to work in an excavation being made where a bank had broken and where a cave in of the bank was momentarily expected; that the bank had caved in many times previously; that the place where plaintiff was required to work was "nothing more or less than a death trap"; and that defendant caused plaintiff to work in the place "with deliberate intent" to injure or kill him. In discussing the point there involved the Court stated: "* * * We do not say that deliberate intent to injure can be inferred from the facts set up in this declaration. We merely hold that the allegations are sufficient to admit evidence, in addition to the facts alleged, to show such intent. As to the averment being a conclusion of law, we think it is the averment of an ultimate fact."

In *Maynard* v. *Coal Co.*, 115 W. Va. 249, 175 S. E. 70,

plaintiff's decedent stumbled over a protruding bolt in the cover of a conveyor, fell into the conveyor and was killed. The declaration charged that defendant knew of the great danger of the conveyor covering being out of repair and that " 'the danger of it momentarily coming open in the course of its operation, thereby exposing the buckets or carriers was so apparent that the said defendant, at all times, had notice and was charged with notice that the place where the plaintiff's decedent was required to work was nothing more or less than a death trap'; that the defendant through its willful, deliberate, and unlawful negligence in permitting the conveyor to become open and the bolt improperly to protrude thereby disregarded its duties to the plaintiff's decedent 'with deliberate intent to injure him.' " In Point 1 of the syllabus the Court held: "* * * Allegations in a declaration of acts of gross negligence by the employer do not constitute deliberate intention within the meaning of the said statutory provision. To bring a case within said provision, at the very least, there must be alleged facts from which the natural and probable consequences reasonably to be anticipated would be death or serious injury to the employee affected thereby."

In *Allen* v. *Mining Co.*, 117 W. Va. 631, 186 S. E. 612, plaintiff was injured while riding on the front end of a trip of empty mine cars, by coming in contact with a wooden trap door, installed the day before the injury. The question before the Court was whether evidence introduced by plaintiff was sufficient to support the verdict as to deliberate intention of defendant to produce the injury. The Court held the evidence insufficient, and quoted with approval from *Jenkins* v. *Carman Manufacturing Co.*, 79 Ore. 448, 155 Pac. 703, 11 N. C. C. A. 547, as follows: " 'The deliberate intent (mentioned in the complaint) follows as a deduction from the allegation of knowledge of the danger and the carelessness, negligence and recklessness of the defendant in not obviating it. In our opinion the allegation goes no further than to charge that defendant with full knowledge of the

defect, carelessly, negligently and recklessly took the risk of its injuring plaintiff. * * * A deliberate act is one of the consequences of which are weighed in the mind beforehand. It is prolonged meditation, and the word when used in connection with an injury to another denotes design and malignity of heart. * * * We think that by the words "deliberate intention to produce the injury" that the lawmakers meant to imply that the employer must have determined to injure an employee and used some means appropriate to that end; that there must be a specific intent, and not merely carelessness or negligence, however gross'."

We are of the opinion that in the instant case the charge of "deliberate intent" is necessarily only "a deduction from the allegations of knowledge of the dangers and the carelessness, negligence and recklessness of the defendant in not obviating it", and, therefore, not sufficient to show deliberate intent to injure or kill. "Gross negligence is not tantamount to 'deliberate intention' to inflict injury. It may be that the carelessness, indifference and negligence of an employer may be so wanton as to warrant a judicial determination that his ulterior intent was to inflict injury. But in the very nature of things, a showing which would warrant such finding would have to be clear and forceful in high degree. Even in the *Collins* case, *supra,* notwithstanding the incriminatory and revolting nature of its allegations, we held merely 'that the allegations are sufficient to admit evidence, in addition to the facts alleged, to show such intent.' " *Maynard* v. *Coal Co., supra.*

The rulings of the circuit court sustaining the demurrers of the defendants, Appalachian. Constructors, Inc., Victor Zeni, The American Oil Company and Dale Mayfield, are reversed, and the rulings of that court sustaining the demurrers of defendants, Christopher Coal Company and Guy Hinerman, are affirmed.

*Rulings affirmed in part;*
*reversed in part;*
*case remanded.*

Fox, President, concurring in result:

I concur in the result reached in this case, and I do not disagree with the reasoning of the opinion prepared by Judge Given. However, I would reach the same result on a different line of reasoning, so far as liability of the Christopher Coal Company is involved in this action. In my opinion that liability, if any, exists under a statute and has no relation whatever to the negligence with which the other defendants are charged. The Coal Company is immune from suit on account of such negligence by reason of being a subscriber to the Workmen's Compensation Fund. I do not think the other defendants in the action can be joined with the Christopher Coal Company in an action based on their negligence, which, it is clear, is separate and distinct from any act or conduct of the Christopher Coal Company under which it could be made liable. The opinion as written will permit plaintiff to amend his declaration in such a way as to permit him to maintain his action against the Appalachian Constructors, Inc., the American Oil Company and the Christopher Coal Company. I do not think this can be done.