## CHARLESTON.

STATE *ex rel.* J. H. MYLES, *Administrator of* WILLIAM
DAILY, *Deceased v.* AMERICAN SURETY COMPANY
OF NEW YORK.

· (No. 5332)

Submitted April 28, 1925.   Decided May 5, 1925.

DEATH—TRIAL—*Special Finding, to Prevail Over General Verdict, Must be Irreconcilably Inconsistent with it; Special Finding Decedent Was Guilty of Negligence Contributing Indirectly to Injury Held Not Inconsistent with General Verdict.*

A special finding, to prevail over a general verdict, must be irreconcilably inconsistent with it, and clearly exclude every conclusion that would harmonize it with that verdict; and where the jury have by their general verdict answered in the negative the question of whether the plaintiff's decedent was guilty of negligence contributing *proximately* to the injury resulting in his death, the fact that they have said in reply to special interrogatories submitted to them on defendant's motion, that the decedent was guilty of negligence contributing *indirectly* to the injury, does not create such an inconsistency between the special findings and the general verdict as to warrant the entering up of judgment for de-

fendant notwithstanding the verdict based on the special findings.

(Death, 19 C. J. § 185; Trial, 38 Cyc. p. 1929).

NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.

Error to Circuit Court, Greenbrier County.

Action by the State of West Virginia, on the relation of J. H. Myles, administrator of William Daily, deceased, against the American Surety Company of New York and another. After entering judgment by confession against defendant Winifred McClung, judgment was entered for defendant the American Surety Company of New York, notwithstanding a general verdict for plaintiff, and plaintiff brings error.

*Judgment reversed; verdict reinstated; judgment entered for plaintiff.*

*Magee McClung*, for plaintiff in error.
*Mark L. Jarrett*, for defendant in error.

LIVELY, PRESIDENT:

This is an action of debt instituted in the Circuit Court of Greenbrier County by the plaintiff against defendant upon what is commonly known as a pistol bond, in which bond Winifred McClung was principal and defendant was surety.

The breach of the bond complained of in this action was the unlawful, accidental and negligent killing of plaintiff's decedent, William Daily, by means of a revolver in the hands of the principal, Winifred McClung. The shooting occurred on June 11, 1923, at or near the coal mining town of Quinwood, in Greenbrier County.

Defendant filed a plea in abatement for the non-joinder of the principal, whereupon plaintiff amended his declaration and made the principal a party. The principal appeared, filed his petition and confessed judgment; whereupon judgment was entered against him for $3,500.00. Defendant, the surety, pleaded the general issue, covenants performed, and contributory negligence of plaintiff's decedent. Upon defendant's motion the case was continued as to it, and at the September Term, 1924, upon the issues joined the jury re-

turned a general verdict against defendant for $1,750.00. With the general verdict were returned several special findings in answer to interrogatories propounded by defendant. On September 28, 1924, the court entered judgment for defendant notwithstanding the general verdict, on the ground that the special findings were inconsistent therewith, in that they showed contributory negligence on the part of plaintiff's decedent barring a recovery. From this judgment plaintiff obtained this writ.

At the January Term, 1923 of the Circuit Court of Greenbrier County, Winifred McClung, who at that time was employed as a night watchman for the Nelson Fuel Company, was granted a license to carry a pistol and other weapons under the provisions of section 7, of chapter 148 of the Code, and on January 30, 1923 he entered into a bond for the sum of $3,500.00 with the defendant, American Surety Company of New York, as his surety. The conditions of the bond were that Winifred McClung, the principal, should not carry any weapon except in accordance with his application and as authorized by the circuit court, and the payment of "'all costs and damages accruing to any one by the accidental discharge or improper, negligent or illegal discharge or use of said weapon.''

On Sunday, June 10, 1923, Winifred McClung and William Daily, who was also an employe of the Nelson Fuel Company at Leslie, had been drinking liquor together, and on the following day, Monday, Daily called at McClung's home and requested McClung to go with him to obtain some whiskey; and so, about noon, with this purpose in mind, they began their journey to the point where they had secured the liquor the day before. George E. McCreary accompanied them. The parties selected as their route the railroad track of the G. & E. Railroad leading up from the mining town of Leslie. McClung had in his possession two revolvers, and while proceeding along the railroad track he exhibited the pistols to Daily, and the latter had one of them in his hands one or more times. When the parties had journeyed about a mile and a half and while McClung and Daily were walking side by side on the track, McClung being on the right of Daily, a pistol held by McClung was discharged, the bullet

striking Daily on the right hip severing the femoral artery and causing his death a short time thereafter. Just before the shooting occurred Daily had been fooling with McClung's revolver putting it on half-cock, and after having done this, he let the hammer down and handed the gun to McClung and asked him if he could put it on half-cock. McClung took the pistol and had it down in front of him as they were walking along. The muzzle was pointed in the direction of Daily on McClung's left. With the gun in this position and while McClung was trying to put the pistol on half-cock, it was unintentionally discharged inflicting the wound causing Daily's death. According to McClung's testimony both he and Daily were intoxicated at the time of the accident. He further testified that the shooting was unintentional, and also that at the time of the accidental discharge Daily did not have hold of the pistol. Mrs. McClung testified that Daily and her husband were fooling with the pistols on the porch of her home before their departure, and that she being afraid some one might get hurt, had taken the children into the house. McReady, who at the time of the shooting was walking in front of McClung and Daily, did not testify on the trial of the case.

The two issues raised in the lower court were: First. Was the principal on the bond guilty of a breach of its conditions when he fired the shot which caused the death of William Daily? Second. Was the plaintiff's decedent guilty of contributory negligence contributing substantially to the shooting? The first issue was raised by the allegations of the declaration and defendant's plea of general issue; and the second issue was raised by defendant's special plea No. 3 and the plaintiff's replication thereto.

It is agreed that the issue of whether the principal was guilty of a breach of conditions of the bond, was decided in plaintiff's favor by the general verdict for plaintiff. The parties, however, differ as to the interpretation to be placed upon the findings of the jury in deciding the question of whether plaintiff's decedent was guilty of negligence contributing proximately to the shooting that caused his death. The plaintiff contends that the jury found in the negative; while the defendant claims that this question was answered in

the affirmative by the special findings of the jury in answer to the special interrogatories propounded to them on defendant's motion. The special interrogatories so submitted and the special findings of the jury thereon were as follows:

"First: Was the deceased, William Daily, intoxicated at the time he was shot by Winifred McClung, and if so, did his intoxicated condition contribute directly to the shooting that caused his death?
Answer: No—indirectly.
"Second: Was the deceased, William Daily, at the time of the shooting that caused his death engaged willingly with Winifred McClung in negligently handling the revolver with which he was shot?
Answer: Yes.
"Third: Did the deceased, William Daily, at the time he was shot, voluntarily participate with Winifred McClung in negligently handling the revolver with which he was shot?
Answer: Yes.
"Fourth: Did the conduct of the deceased, William Daily, in handling the revolver with Winifred McClung directly help to bring about the shooting that caused his death?
Answer: No—indirectly.
"Fifth: Was the deceased, William Daily, in your opinion under the evidence in this case, guilty of any negligent conduct helping directly to bring about the shooting which caused his death?
Answer: No—indirectly."

Did the court err in setting aside the general verdict of the jury and entering up judgment for the defendant notwithstanding the verdict by reason of the findings of the jury in answer to the special interrogatories propounded by defendant? Upon the answer to this question rests the decision of this case. The plaintiff contends that the court did err in taking this action, because all of the testimony introduced showed that the defendant's principal was guilty of negligence in handling the pistol and that Daily came to his death because of the negligence and the accidental discharge of the pistol in the hands of the principal; that there was no evidence that Daily was in any way responsible or

that any negligence on his part contributed to the injury resulting in his death; that the findings of the jury upon the special interrogatories were not such as would warrant the court in entering up judgment for defendant even though the facts were disputed. Plaintiff further contends that the last two interrogatories are the only ones which go to the merits of the defense of contributory negligence and that in their answers to each of these interrogatories the jury found that the plaintiff's decedent was not guilty of any contributory negligence contributing directly to the injury. On the other hand, the defendant argues that the judgment of the circuit court was correct because the plaintiff's own testimony as well as that of the defendant showed clearly the mutual negligence of plaintiff's decedent without which he would not have been killed; and also because the jury in answer to special interrogatories Nos. 2 and 3, found that William Daily knowingly and willingly engaged and participated with Winifred McClung in the negligent and careless handling of a revolver, a dangerous and deadly weapon, at the very time he was shot and killed; that the negligent conduct of the deceased not only clearly appears from the evidence, but that it has been indisputably established by the findings of the jury.

In determining the correctness of the action of the lower court in entering up judgment for defendant notwithstanding the verdict, it becomes necessary to answer this question, are the special findings of the jury inconsistent with their general verdict? Before a special finding can control a general verdict the record must show on its face that the special finding and the general verdict are so conflicting that both cannot stand. "A special finding, to prevail over a general verdict, must be irreconcilably inconsistent with it, and clearly exclude every conclusion that would harmonize it with that verdict." *Runyan* v. *Kanawha Water & Light Co.*, 68 W. Va. 609. And, "In determining whether the special findings are inconsistent with the general verdict, so that the latter must be held to be controlled by the former, the court is not permitted to regard the evidence introduced on the trial. Ordinarily resort can be had only to the findings and verdict and to the pleadings. The question to be decided

is not whether, in the light of the evidence adduced, the general verdict is inconsistent with the facts found, the remedy in case of such inconsistency being a new trial, but whether, accepting the facts found, within the issues, as verities, there is irreconcilable conflict between them and the general verdict." Clementson on Special Verdicts, chap. 8, page 136.

In giving defendant's instruction No. 2, the court instructed the jury that, "though you may believe from the evidence in this case that the shot which took the life of Wm. Daily was accidentally fired by Winifred McClung, yet you are further instructed that this fact alone would not entitle the plaintiff to recover against the American Surety Company damages in this case; but before such recovery would be warranted you must further believe from the preponderance of the evidence that the said Wm. Daily did not do anything, or omit to do anything, that a reasonably prudent person, under all the circumstances existing would have done, for his own personal safety; and if you believe from the evidence in this case that the said Wm. Daily did not use due, reasonable and ordinary care, and that such failure on his part contributed to his injury, then you should find for defendant." This instruction, while probably not technically correct because of the failure to state therein that the contributory negligence must have contributed proximately to the injury before they were entitled to find for the defendant, put squarely before the jury the question of the contributory negligence of the plaintiff's decedent, and it was in the face of this instruction and others covering much the same ground, that they returned a general verdict for the plaintiff. If there had been no special findings there could be no doubt that the jury in returning the general verdict had answered the question of Daily's contributory negligence in the negative. The defendant takes the answers to special interrogatories Nos. 2 and 3 as being decisive of this question. In these interrogatories the jury was asked to answer the question as to whether or not the deceased, William Daily, at the time he was shot, voluntarily participated with Winifred McClung in negligently handling the revolver, and they answered, "Yes." The plaintiff relies on the answers of the jury to interrogatories Nos. 4 and 5, in which the jury was asked if

the conduct of deceased, William Daily, in handling the revolver with Winifred McClung had *directly* helped to bring about the shooting that caused his death; and whether the deceased, William Daily, under the evidence in the case was guilty of any negligent conduct helping *directly* to bring about the shooting which caused his death, and to both of these interrogatories, the answer was, "No, indirectly." Do the special findings contradict any one material fact found by the general verdict? We believe not. It is not apparent to us that there is any irreconcilable conflict between any one or all of the special findings and the general verdict. All of the interrogatories were intended to ask the jury to find whether Daily's negligence, if any, was the proximate cause of the injury, and the answers to all of them must be construed together. The jury by defendant's instruction No. 2 and others given by the court had before them the question of Daily's contributory negligence, and by their general verdict they answered this question in the negative. By their special findings they have said that *indirectly* the plaintiff's decedent had been guilty of negligence contributing to his injury, and we so interpret the answers to the special findings. But negligence contributing *indirectly* to an injury does not bar a recovery. To be a bar the contributory negligence of the plaintiff must be the *direct* or proximate cause of the injury. In *Carnefix* v. *R. R. Co.*, 73 W. Va., 538, this court said: "Contributory negligence is a defense. He who would rely on it to defeat recovery must prove, by a preponderance of evidence, the fact of negligence, and that it was the proximate cause of the injury."

The special findings of the jury are not inconsistent with the general verdict, and the court below should have entered up judgment on the general verdict. The judgment will be reversed and judgment will be entered here for the plaintiff.

*Judgment reversed; verdict reinstated; judgment entered for plaintiff.*